Philip BERRIGAN and Daniel J.
Berrigan, Plaintiffs,

v.

Maurice SIGLER, Chairman of the Board
of Parole, United States Department of
Justice; and all of the members of the
said Board of Parole, namely: William
E. Amos, et al., Defendants.

Civ. A. No. 75–73.

United States District Court,
District of Columbia.

May 3, 1973.

Morton Stavis, Newark, N. J., admitted pro hac vice, for plaintiffs.

Gil Zimmerman, Asst. U. S. Atty., Washington, D. C., for defendants.

MEMORANDUM–ORDER

GASCH, District Judge.

This matter came on for consideration of plaintiffs' motion for a preliminary injunction and the defendants' motion for summary judgment. Plaintiffs originally filed their complaint on January 12, 1973, seeking judicial review of the administrative action of the defendant members of the United States Board of Parole in denying permission to plaintiffs to travel to Hanoi, North Vietnam; a declaratory judgment that the defendants have interfered with plaintiffs' constitutional rights by refusing such permission; injunctive relief restraining the defendants from interfering with the proposed trip to Hanoi and future travel plans wherein plaintiffs desire to exercise their First Amendment rights; and a mandatory order compelling the defendant Board of Parole to permit the plaintiffs to make the trip to Hanoi "and any other travel

of a similar nature." [1] On the same day they filed their complaint, the plaintiffs moved this Court to enter a temporary restraining order directing that the defendants approve plaintiffs' request to go to Hanoi for the period January 18 to January 28, 1973, plus necessary time to return. Since the power to grant immediate equitable relief, especially in the form of a mandatory order, should be "sparingly exercised," [2] the motion for a temporary restraining order required this Court to consider carefully four factors before deciding whether to grant the extraordinary relief requested: (1) Has the petitioner made a strong showing of a substantial likelihood of success on the merits; (2) Has the petitioner shown that without such relief he will be irreparably injured; (3) Would the issuance of a stay substantially harm other parties interested in the proceedings; (4) Where lies the public interest. [3] Being guided by these criteria, and after considering the record of the case and the oral argument of counsel, this Court denied the motion for a temporary restraining order because plaintiffs' showing was less than the "persuasive demonstration" [4] required to invoke the Court's equity powers. [5] On January 17, 1973, the United States Court of Appeals for the District of Columbia Circuit summarily reversed this Court's order denying the motion for a temporary restraining order. [6] On the same day, the Solicitor General presented to the Chief Justice an application for a stay of the order of the Court of Appeals pending a hearing before this Court on plaintiffs' motion for a preliminary injunction. The Chief Justice granted the request for a stay "pending reference of the matter to the full court." On January 22, 1973, the Supreme Court ruled that "[t]he applica-

1. Verified Complaint, Paragraph 1(d).

2. Dorfmann v. Boozer, 134 U.S.App.D.C. 272, 414 F.2d 1168, 1173 (1969); O'Malley v. Chrysler Corp., 160 F.2d 35, 36 (7th Cir. 1947). *See also* 7 J. W. Moore, Federal Practice ¶ 65.04 [1], p. 65–38 (2d ed. 1972).

3. The landmark decision which enunciated the factors that influence the decision on whether to grant extraordinary relief is Virginia Petroleum Jobbers Ass'n v. F.P.C., 104 U.S.App.D.C. 106, 259 F. 2d 921, 925 (1958). The four question formula has been often followed since the *Virginia Petroleum* case. *See, e. g.*, Murray v. Kunzig, 149 U.S.App.D.C. 256, 462 F.2d 871 (1972); Quaker Action Group v. Hickel, 137 U.S.App.D.C. 176, 421 F.2d 1111 (1969), and cases cited in footnote 8, at 1116.

4. Udall v. D. C. Transit System, Inc., 131 U.S.App.D.C. 381, 404 F.2d 1358, 1361 (1968); District 50, United Mine Workers of America v. International Union, United Mine Workers of America, 134 U.S.App.D.C. 34, 412 F.2d 165, 167 (1969).

5. One of the principal reasons for denying the motion for a temporary restraining order was that the Court's power to issue a restraining order should not be used to give a party essentially the affirmative relief he seeks on the merits of the controversy. See Dorfmann v. Boozer, 134 U.S.App.D.C. 272, 414 F. 2d 1168, 1173, n. 13 (1969); Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 808–809 (9th Cir.), cert. denied, 375 U.S. 821, 84 S.Ct. 59, 11 L.Ed.2d 55 (1963); Selchow & Righter Co. v. Western Printing & Lithographing Co., 112 F.2d 430, 431 (7th Cir. 1940).

In addition, this Court was of the opinion that the public interest would not have been advanced by requiring the Board of Parole to permit the plaintiffs to travel to North Vietnam during a critical stage in the peace negotiations being conducted at the time between representatives of this country and representatives of North Vietnam. Concerning the public interest factor, the Supreme Court stated in Virginian Ry. v. System Federation No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789 (1937): "Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *See also,* Yakus v. United States, 321 U.S. 414, 440–441, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

6. Berrigan and Berrigan v. Sigler, Chairman of Board of Parole, et al., 475 F.2d 918 (D.C.Cir., 1973).

tion for stay, presented to the Chief Justice and by him referred to the Court, is granted." [7]

During a hearing held on January 26, 1973, in this Court, at which Philip Berrigan testified on his own behalf, counsel for the government suggested that the transcript of the testimony be submitted to the Board of Parole for such further consideration it might wish to give to plaintiffs' travel request in light of the Vietnam cease-fire agreement executed on January 27, 1973, and any other facts and circumstances that may not have been previously brought to the Board's attention. Since plaintiffs' counsel had disclosed that the invitation to travel to North Vietnam was a "continuing invitation," [8] a referral of this matter to the Board for further evaluation could not be viewed as aggravating the immediate and irreparable injury originally alleged to have been suffered by the plaintiffs. [9] Thus, in the interests of having an adequate record to facilitate proper judicial review of the issues involved herein, this Court referred the

transcript of Philip Berrigan's testimony to the Board of Parole. In compliance with this Court's order, the Board reconsidered this entire matter in an *en banc* session held February 2, 1973, and unanimously denied the plaintiffs' application for permission to travel at the present time to Hanoi, North Vietnam. The case is now ripe for consideration of plaintiffs' motion for a preliminary injunction and defendants' motion for summary judgment.

The record reveals that the plaintiff Daniel Berrigan was released on parole on February 24, 1972, and that plaintiff Philip Berrigan was paroled on December 20, 1972. Both plaintiffs are presently under parole supervision conditions which include, *inter alia*, a requirement that they obtain prior permission from their probation officers for any proposed travel abroad. [10] In addition to the conditions of parole, the Department of Justice has promulgated certain regulations which require Board of Parole approval for trips by parolees outside the continental limits of the United States. [11]

---

7. Sigler, Chairman of Board of Parole, United States Department of Justice, et al. v. Berrigan and Berrigan, 410 U.S. 902, 93 S.Ct. 952, 35 L.Ed.2d 266 (1973).

8. See Plaintiffs' Supplemental Memorandum in Opposition to Petitioners' Application for Stay of an Order of the United States Court of Appeals for the District of Columbia, dated January 22, 1973, at p. 4; attached as Exhibit 8 to the government's Supplement to Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction.

9. See plaintiffs' Supplemental Memorandum in Opposition to Petitioners' Application for Stay of an Order of the United States Court of Appeals for the District of Columbia, dated January 18, 1973, at p. 4, where plaintiffs stated:

"Counsel represents that respondents have as of this time been advised that, if they are permitted to accept an invitation, they are to advise representatives of the Solidarity Committee thereof and arrangements for an immediate trip will be made."

10. *See, e. g.*, the Certificate of Parole given to Philip Berrigan on December 18, 1972, attached to Defendants' Opposition to

Plaintiffs' Motion for Preliminary Injunction. The Certificate of Parole provides in pertinent part:

1. You shall go directly to the district shown on this CERTIFICATE OF PAROLE (unless released to the custody of other authorities). Within three days after your arrival, you shall report to your parole adviser if you have one, and to the United States Probation Officer whose name appears on this Certificate. . . .

 \* \* \* \* \*

3. You shall not leave the limits fixed by this CERTIFICATE OF PAROLE without written permission from the probation officer.

Under the federal statutory parole system, the supervisory duties are performed by United States Probation Officers acting as Parole Officers. See 18 U.S.C. § 3655.

11. "§ 2.28. Same; travel by parolees and mandatory releasees.

"Except as otherwise provided in this section, it is the general rule of the Board that a parolee may travel outside his supervision district only with the prior approval of the Board. Travel outside a district without prior Board approval

Although the plaintiffs' ability to travel was limited by the conditions of parole and the Department of Justice regulations, the Board has granted them numerous requests to travel for engagements and meetings at various locations within the United States. Moreover, in May and October of 1972, the Board granted permission for Daniel Berrigan to travel to Cannes, France; Paris, France; Stockholm, Sweden; London, England; and Tokyo, Japan. During January, 1973, the Board granted permission for Daniel Berrigan to travel to Paris, France; London, England; and Dublin, Ireland.[12]

On January 7, 1973, the plaintiffs received an invitation to visit North Vietnam and the following day they sought Board approval for the proposed trip. The Board's denial of this travel request precipitated this litigation which has already run the gamut of the judicial process. The record is now complete for disposition of the two principal issues in the case: (1) whether the defendants' denial of permission to travel to North Vietnam was an unconstitutional infringement on plaintiffs' First Amendment rights, and (2) whether the defendants' disapproval of plaintiffs' travel request was an arbitrary denial of substantive due process. A proper resolution of these questions requires a clear understanding of the purposes of the parole system, the statutory duties of the United States Board of Parole, and the unique status of a parolee.

The parole system is an administrative structure through which persons may be released from imprisonment and allowed to serve the remainder of their sentences in their communities under the supervision of the paroling authorities. The existence of parole is the result of a legislative determination that the goals of rehabilitation and reintegration into society can be better achieved by reintroducing the offender to liberty through a transitional period of controlled release rather than requiring the individual to serve his entire sentence in prison and then abruptly restoring him to total freedom. To accomplish the purposes of rehabilitation and reintegration and to protect the citizenry against conduct detrimental to the public interest, many conditions and limitations are imposed on the parolee. Compliance with these conditions is ensured by the supervision of the parole officers and the possibility of parole revocation and imprisonment if the conditions are violated.

In general, the terms and conditions typically require the parolee to avoid contact with known criminals, to remain in the locality and employment to which he was released, to report to his parole officer on a regular basis and to obtain the prior approval of the paroling authorities for traveling outside the community. *See* Morrissey v. Brewer, 408 U.S. 471, 478, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Although the specific rules and conditions vary in each jurisdiction, it is generally accepted that the parolee's freedom is much more circumscribed than the average citizen who is not serving a sentence for a criminal offense. Perhaps the most accurate summary of the

may be authorized by a probation officer subject to the following-described limitations.

"(a) Board aproval (sic) shall be required for vacation trips outside the district.

"(b) Board approval shall be required for recurring travel outside the district, except in cases involving parolees who cross district boundaries to engage in or seek employment or for shopping or recreation, if such travel is not more than fifty miles from the district line.

"(c) Board approval shall be required for travel outside the continental limits of the United States, including travel or work aboard ship.

"(d) Board approval shall be required in any case in which specific travel conditions have been imposed upon the parolee by the Board."
28 C.F.R. § 2.28 (1972).

12. See Affidavit of Steve D. Johnston, Acting Parole Executive, United States Board of Parole; Defendants' Exhibit 2 attached to Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction.

status of a parolee and his relationship to the Parole Board is contained in Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, cert. denied sub nom., Thompson v. United States Board of Parole, 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315 (1963), where the then District of Columbia Circuit Judge Warren Burger stated:

> The relationship of the parolee and the Board beginning with this period of conditional release may be described as the supervisory or regulatory period. During the period of parole, the prisoner on conditional liberty is subject to the supervision of the Board acting through a federal parole officer.
>
> \* \* \* \* \* \*
>
> From our review of the nature and purposes of parole it can be seen that appellants are neither totally free men who are being proceeded against by the government for commission of a crime, nor are they prisoners being disciplined within the walls of a federal penitentiary. They stand somewhere between these two. A paroled prisoner can hardly be regarded as a 'free' man; he has already lost his freedom by due process of law and, while paroled, he is still a convicted prisoner whose tentatively assumed progress towards rehabilitation is in a sense being 'field tested.' Thus it is hardly helpful to compare his rights in that posture with his rights before he was duly convicted.
>
> \* \* \* \* \* \*
>
> The Bureau of Prisons and the Parole Board operate from the basic premise that prisoners placed in their custody are to be rehabilitated and restored to useful lives as soon as in the Board's judgment that transition can be safely made. This is plainly what Congress intends. Thus there is a genuine identity of interest if not purpose in the prisoner's desire to be released and the Board's policy to grant release as soon as possible. Here there is not the attitude of adverse, conflicting objectives as between the parolee and the Board inherent between prosecution and defense in a criminal case. Here we do not have pursuer and quarry but a relationship partaking of parens patriae. In a real sense the Parole Board in revoking parole occupies the role of parent withdrawing a privilege from an errant child not as punishment but for misuse of the privilege. 'Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders.' Williams v. People of State of New York, 337 U.S. [241] at 249, 69 S.Ct. [1079] at 1084. [93 L.Ed. 1337]

Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, 235, 237 (1963).

■ ■ Originally, release on parole was viewed as an act of grace by the State,[13] however, as announced in Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, 235 (1963), and recently reiterated in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), parole is best characterized as a custodial or regulatory period of "conditional liberty properly dependent on observance of special parole restrictions."[14] In order to perform their supervisory duties, parole boards have uniformly re-

---

13. *See*, Escoe v. Zerbst, 295 U.S. 490, 492, 55 S.Ct. 818, 79 L.Ed. 1566 (1935) ; *cf.* United States v. Wilson, 32 U.S. (7 Pet.) 149, 160, 8 L.Ed. 640 (1833) ; *see also* Brown v. Kearney, 355 F.2d 199, 200 (5th Cir. 1966) ; United States ex rel. Randazzo v. Follette, 282 F.Supp. 10, 12 (S.D.N.Y.1968), aff'd, 418 F.2d 1319 (2d Cir. 1969), cert. denied, 402 U.S. 984, 91 S.Ct. 1672, 29 L.Ed.2d 150 (1971).

14. Morrissey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The statutory language of 18 U.S.C. § 4203(a) states that the parolee "while on parole, [is] in the legal custody and under the control of the Attorney General. . . ." *See also*, Minder v. Assistant Director, 229 F.2d 432 (6th Cir. 1955) ; United States ex rel. Rowe v. Nicholson, 78 F.2d 468 (4th Cir.), cert. denied, 296 U.S. 573, 56 S.Ct. 118, 80 L.Ed. 405 (1935).

ceived statutory grants of broad discretion in setting and enforcing the terms and conditions of parole. The federal statute is a typical example of the broad discretionary power entrusted to paroling authorities:

> Such parolee shall be allowed *in the discretion of the Board*, to return to his home, or to go elsewhere, *upon such terms and conditions*, including personal reports from such paroled person, *as the Board shall prescribe.*
>
> . . .

18 U.S.C. § 4203(a) (emphasis added). Traditionally, courts have been reluctant to interfere with the parole boards' exercise of authority,[15] particularly in the establishment and enforcement of specific conditions of parole.[16] Despite the generally narrow scope of review of Parole Board action, it cannot be said that all Board determinations are totally immune from judicial scrutiny, especially where such determinations are attacked on constitutional grounds. *See, e. g.,* Sobell v. Reed, 327 F.Supp. 1294 (S.D. N.Y.1971); Hyland v. Procunier, 311 F. Supp. 749 (N.D.Cal.1970). In the case at bar, plaintiffs contend that the defendants' action in denying their request to travel to North Vietnam violates the Fifth Amendment and infringes on plaintiffs' First Amendment rights. After carefully considering the purposes of parole, the statutory role of the Parole Board, and the status of a parolee, together with the entire record herein and the applicable legal authorities, this Court concludes that plaintiffs' claims are without merit.

In support of their argument that the imposition and enforcement of travel restrictions interfere with their exercise of First Amendment rights, plaintiffs have placed heavy reliance on Sobell v. Reed, 327 F.Supp. 1294 (S.D.N.Y.1971). In that case the Court held, *inter alia,* that the action of the Board of Parole in denying Morton Sobell's "request[s] to speak and assemble with others in public—and denying to others the hearing of his views on prison conditions and other things—violate the First Amendment."[17] Focusing on the First Amendment, the Court in *Sobell* stated:

> It is wholly clear—indeed, there is no contrary suggestion—that the concern of the Parole Board is not about travel as such. Travel may, of course, pose special problems of parole supervision, but the focus of the Board's actions in this case is upon Sobell's plans for speech and association when he travels.
>
> * * * * * *
>
> Finally, to highlight that the subject is speech and assembly rather than travel, Board Chairman Reed, while expressing only his own view, says he 'would recommend that the Board deny permission for Morton Sobell to address and associate with persons en-

---

15. *See generally,* Williams v. Dunbar, 377 F.2d 505, 506 (9th Cir.), cert. denied, 389 U.S. 866, 88 S.Ct. 131, 19 L.Ed.2d 137 (1967); Clark v. Stevens, 291 F.2d 388 (6th Cir. 1961); State v. Brantley, 353 S.W.2d 793 (Mo.1962). In Brest v. Ciccone, 371 F.2d 981, 982 (8th Cir. 1967), and Barnes v. United States, 445 F.2d 260, 261 (8th Cir. 1971), the discretion granted the Board of Parole under 18 U.S.C. § 4203 was described as "absolute." Cf. Menechino v. Oswald, 430 F.2d 403, 406 (2d Cir. 1970); Earnest v. Moseley, 426 F.2d 466, 468 (10th Cir. 1970).

16. United States v. Binder, 313 F.2d 243, 245 (6th Cir. 1963); Hiatt v. Compagna, 178 F.2d 42, 45 (5th Cir. 1949), aff'd by an equally divided Court, 340 U.S.

880, 71 S.Ct. 192, 95 L.Ed. 639 (1950); United States ex rel. Jacobs v. Barc, 141 F.2d 480, 482 (6th Cir.), cert. denied, 322 U.S. 751, 64 S.Ct. 1262, 88 L.Ed. 1581 (1944). *See also,* Note, Parole Revocation in the Federal System, 56 Geo.L.J. 705 (1969).

17. 327 F.Supp. at 1304 (footnote omitted). In November, 1969, and April, 1970, Sobell requested permission to go to Washington, D.C., to participate in demonstrations against the war in Vietnam, but permission was denied on both occasions. The Board of Parole also refused to allow Sobell to journey to Los Angeles to give a speech in support of a newspaper closely affiliated with communist principles.

gaged in fund raising activities for *People's World'* even if such an address and association involved no travel outside New York City. The Chairman does not indicate where in the Conditions of Parole (*supra* note 2) he would find grounds for so restricting Sobell's right 'to address and associate with persons' in a City within which the latter is presumably free to move at will. And the court perceives no such grounds. But passing that, the point of present importance is the underscoring of the fact that our concern is with First Amendment activities.

327 F.Supp. at 1302–1303 (footnote omitted).

■ The fundamental distinction between Sobell v. Reed and the instant case is that the defendants herein have not infringed upon the plaintiffs' First Amendment rights of free speech and assembly. Plaintiff Philip Berrigan testified at the January 26, 1973, hearing before the Court that neither the Board nor any of its officers have ever restricted his right to freely express his views on any subject. In addition, the record clearly indicates that both plaintiffs have traveled on numerous occasions without any significant limitations on their right to speak or their right to assemble with others. Moreover, regular followers of the news media can observe that since the time the plaintiffs have been released from prison, they have maintained active and vocal roles in the political arena. Unlike the *Sobell* case where the Court found that the Parole Board was intentionally curtailing Sobell's rights of free speech and association, the record herein reflects no significant interference by the Board with the plaintiffs' ability to speak on a variety of subjects with whomever they

please. Accordingly, this Court finds no merit in plaintiffs' allegations that their First Amendment rights of free speech and association have been abridged by the defendants.

·In addition to the claim that their rights of free expression and assembly have been infringed, plaintiffs also impliedly contend that they have been denied their constitutional right to travel. It should be emphasized that no controlling legal authority has ever held that the right to travel abroad is a right explicitly protected under the First Amendment. In the leading case of Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed. 2d 179 (1965), the Supreme Court clearly rejected the appellant's argument that the Secretary of State's refusal to validate his passport for travel to Cuba violated his rights guaranteed by the First Amendment.[18] The Court stated that the "right to travel is protected by the Fifth Amendment"[19] a liberty which cannot be denied without due process of law.[20] Moreover, Chief Justice Warren, speaking for the majority in *Zemel*, pointed out that the right to travel is not an absolute right:

. . . [T]he fact that a liberty cannot be inhibited without due process of law does not mean that it can under no circumstances be inhibited.

The requirements of due process are a function not only of the extent of the governmental restriction imposed, but also of the extent of the necessity for the restriction.

381 U.S. at 14, 85 S.Ct. at 1279 (footnotes omitted).

■ In evaluating the appellant's contention that the government restriction on travel to Cuba abridged his constitutional rights, the Court in *Zemel* adopted a balancing approach and concluded that the restriction was justified

18. 381 U.S. at 16, 85 S.Ct. 1271.

19. *Id.,* at 16, n. 17, 85 S.Ct. at 1281.

20. *Id.,* at 14, 85 S.Ct. 1271. *See also,* Aptheker v. Secretary of State, 378 U.S.

500, 505–506, 84 S.Ct.. 1659, 12 L.Ed.2d 992 (1964) ; Kent v. Dulles, 357 U.S. 116, 125–127, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958).

by the weightiest considerations of national security.[21] In addition to Zemel v. Rusk, it is well settled in this jurisdiction that the right to foreign travel is a relative right that may be limited in certain situations where substantive due process has been afforded. *See, e. g.,* Worthy v. United States, 328 F.2d 386, 393 (5th Cir. 1964); Worthy v. Herter, 106 U.S.App.D.C. 153, 270 F.2d 905, 909, cert. denied, 361 U.S. 918, 80 S.Ct. 255, 4 L.Ed.2d 186 (1959); Shachtman v. Dulles, 96 U.S.App.D.C. 287, 225 F.2d 938, 941 (1955). The appropriate test of substantive due process is whether a government regulation or restriction is unreasonable, arbitrary or capricious under the circumstances of a particular case. *See* Nebbia v. New York, 291 U.S. 502, 525, 54 S.Ct. 505, 78 L.Ed. 940 (1934); Shachtman v. Dulles, 96 U.S.App.D.C. 287, 225 F.2d 938, 941–942 (1955). In Shachtman v. Dulles, the United States Court of Appeals for the District of Columbia Circuit, held that the Secretary of State's denial of a passport to an applicant solely on the grounds that he was a leader of an organization listed as subversive was arbitrary and violative of substantive due process of law. As the Court in *Shachtman* stated:

> What is involved at the present stage is a question of substantive due process—whether the refusal for the reason given, as alleged in the complaint and undisputed thus far by the Secretary, was arbitrary.
>
> \* \* \* \* \* \*
>
> What is arbitrary, however, in the sense of constituting a denial of due process, depends upon circumstances.

Moyer v. Peabody, 212 U.S. 78, 84, 29 S.Ct. 235, 53 L.Ed. 410; Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834. Restraint upon travel abroad might be reasonable during an emergency though in normal times it would be arbitrary. World conditions, and those in particular areas, as to which the Executive has special information and on the basis of which he is especially qualified to make decisions bear upon the question. 225 F.2d at 941–942.

Utilizing the balancing approach employed in Zemel v. Rusk, and following the substantial due process test announced in Shachtman v. Dulles, it must be determined whether the Parole Board's denial of permission to plaintiffs to travel to North Vietnam was arbitrary and unreasonable under the circumstances.

It is important to reiterate that the parolee does not enjoy the same status and scope of freedom possessed by the average citizen who has not been guilty of violating the law. Since the parolee has participated in illegal activity, he must suffer at least a partial and temporary forfeiture of the full measure of freedoms granted to persons who have not been convicted. The Supreme Court has articulated this fundamental point in the following way:

> To accomplish the purpose of parole, those who are allowed to leave prison early are subjected to specified conditions for the duration of their terms. These conditions restrict their activities substantially beyond the ordinary

21. The Court in *Zemel* emphasized:
 The right to travel *within* the United States is of course also constitutionally protected, *cf.* Edwards v. California, 314 U.S. 160 [62 S.Ct. 164, 86 L.Ed. 119]. But that freedom does not mean that areas ravaged by flood, fire or pestilence cannot be quarantined when it can be demonstrated that unlimited travel to the area would directly and materially interfere with the safety and welfare of the area or the Nation as a whole. So it is with international travel. That the restriction which is challenged in this case is supported by the weightiest considerations of national security is perhaps best pointed up by recalling that the Cuban missile crisis of October 1962 preceded the filing of appellant's complaint by less than two months. 381 U.S. at 15–16, 85 S.Ct. at 1280. It should be noted that in the case at bar the defendants' principal reason for denying plaintiffs' request was the determination that travel to North Vietnam was not in the national interest.

restrictions imposed by law on an individual citizen. . . . Typically, also they must seek permission from their parole officers before engaging in specified activities, such as changing employment or living quarters, marrying, acquiring or operating a motor vehicle, traveling outside the community, and incurring substantial indebtedness.[22]

\* \* \* \* \* \*

The State has found the parolee guilty of a crime against the people. That finding justifies imposing extensive restrictions on the individual's liberty.[23]

In Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, cert. denied sub nom., 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315 (1963), a persuasive decision in this jurisdiction, the Court distinguished between the rights of a parolee vis-a-vis an average citizen:

The very conditions imposed—which are not challenged here—could not be imposed on a person not convicted and under sentence. The United States cannot constitutionally impair a citizen's right to leave the District of Columbia or frequent pool halls, but it can do so to Hyser and the other appellants, whose freedoms have been substantially abridged in accord with the requirements of due process.

318 F.2d at 239.

It is clear, therefore, that in the instant case plaintiffs are asserting a per se, limited right to travel abroad, which is further restricted herein by the fact that they are only entitled to the circumscribed liberties properly accorded an individual on parole status.

On the other side of the balance is the Parole Board's stated reasons for denying permission to plaintiffs to journey to North Vietnam. One reason for the Board's refusal to grant plaintiffs' request is founded upon a Board of Parole policy "to disapprove any application by a parolee to travel to a foreign area where the Secretary of State, acting within his competence, determines that such travel is not in the public interest."[24] In expanding on this rationale, the Board stated:

The Board strongly considers that it would be improper for the Board, an agency of the U. S. Government acting within its assigned responsibilities, to give its permission to travel to a foreign area, where the Secretary of State, acting within his foreign relations responsibilities, has determined that travel to such foreign area "is not in the national interest of the United States."[25]

 It is apparent that the Board is merely adhering to a general policy of not permitting parolees to travel to certain parts of the world. These area restrictions apply equally to all parolees, thus avoiding the need for rendering particularized determinations on the fitness of each parolee to journey abroad.[26]

---

22. Morrissey v. Brewer, 408 U.S. 471, 478, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972).

23. *Id.*, at 483, 92 S.Ct. at 2601.

24. See the Board's "Statement of Reasons" dated February 5, 1973, at 7; attached as government Exhibit No. 9 to Second Supplement to "Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction."

25. *Id.* In reference to the current situation, the Administrator, Bureau of Security and Consular Affairs, advised the Board that "the Secretary of State has concluded that the proposed travel of . . . [plaintiff parolees] . . . .

to North Viet-Nam is not in the national interest of the United States," and that this determination had been reached upon application of "the criteria of Title 22, Code of Federal Regulations, Section 51.73"; Letter dated February 2, 1973, Government Exhibit 9, Att. 2.

26. In the course of this litigation, plaintiffs noted that the Board had earlier approved the application of James R. Hoffa to travel to Hanoi. However, the Board's "Statement of Reasons," dated February 5, 1973, p. 6 n. 1, indicates that such approval was cancelled apparently due to the State Department's refusal to validate his passport.

If the Board distinguished among individual parolees on the basis of their past behavior, or political beliefs and associations, then Board decisions on travel requests would be susceptible to close constitutional scrutiny under the First Amendment. *Cf.* Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958). However, as in the case of Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965), the administrative action here was made on broad policy considerations without reference to any characteristic peculiar to plaintiffs. Consequently, the Board cannot be fairly accused of discriminating against the plaintiffs for having previously expressed their political viewpoints in a way that violated the law.

 Considering the broad discretion vested in the parole authorities under 18 U.S.C. § 4203(a),[27] this Court is unable and unwilling to issue a proclamation that the Board of Parole may not consider the public interest and the national welfare in the administration of its assigned responsibilities to supervise and control the conduct and travel of persons on parole. Furthermore, the Board should not be restricted to the reports and recommendations generated within its own office, but rather should be allowed to solicit and evaluate the advice of other governmental bodies prior to rendering its administrative decisions. This Court would be chartering an uncertain course indeed if it assumed the duty of prescribing those factors which should and should not be considered by the Board of Parole. If the reasons for Parole Board action have a rational relationship to the administrative responsibilities of the Board, then judicial inquiry must not result in a finding that the paroling authorities have abused their discretion.

In the case at bar, the Board's disapproval of plaintiffs' proposed trip to North Vietnam was based, in part, on the delicate stage of the peace negotiations being conducted between this country and the other participants in the internecine conflict in Southeast Asia; the State Department's determination that the plaintiffs' trip would not be in the public interest; and the precarious posture of the cease-fire agreement presently in effect. These considerations are properly within the Board's designated responsibility of ensuring that parolees do not engage in activities that are detrimental to the public interest. Of course, the public is not only concerned with the prevention of domestic criminality, but also with the avoidance of international incidents precipitated by the conduct of parolees in foreign countries. In Worthy v. Herter, 106 U.S.App.D.C. 153, 270 F.2d 905, cert. denied, 361 U.S. 918, 80 S.Ct. 255, 4 L.Ed.2d 186 (1959), Judge E. Barrett Prettyman made the following poignant observation which deserves repeating here:

We think that, if the Executive foresees that the presence of American citizens in a designated foreign area may, by reason of military or political conditions there, evolve into, or be the occasion of, a clash, diplomatic or military, with a foreign government, his power in respect to foreign affairs includes power to refuse to sanction the travel of American citizens in that area. To hold the contrary would be to hold that the protection of the peace against American-caused incidents in foreign countries is outside the realm of foreign affairs. Such latter holding would be both illogical and unrealistic. In foreign affairs, especially in the intimate posture of today's world of jets, radio, and atomic power, an individual's uninhibited yen to go and to inquire may be circumscribed. A blustering inquisitor avowing his own freedom to go and do as

---

Plaintiffs have not alluded to any federal parolee who has traveled to North Vietnam with Board permission.

27. *See generally,* notes 15 and 16, *supra,* for cases which support the concept

that the parole authorities are vested with broad discretion in granting parole and evaluating those factors which warrant the imposition of conditions restricting a parolee's liberties.

he pleases can throw the whole international neighborhood into turmoil.

270 F.2d at 911.

██ Although the *Worthy* decision dealt primarily with the propriety of governmental restrictions on travel to certain countries under communist domination, the above-quoted language of the Court clearly articulates the public interest in avoiding an international crisis that could be caused by the presence of Americans in other areas of the world. It must be remembered that plaintiffs herein were convicted for criminal activity that was directly related to their vehement protest against this country's policy regarding Southeast Asia. It is not a totally unreasonable proposition, therefore, that plaintiffs' presence in North Vietnam could have an adverse effect upon the American public's interest in preserving the Vietnam cease-fire agreement and in bringing the entire Southeast Asia conflict to a final and just resolution. Accordingly, this Court concludes: first, that the Parole Board's denial of permission to plaintiffs to travel to North Vietnam, due to the delicate status of the Paris accord and the volatile and precarious relationship existing between this country and North Vietnam, was not an arbitrary exercise of discretion; and secondly, that this reason for the Board's action has a rational relationship to the Board's administrative responsibility of safeguarding the public interest.

The second reason for the defendants' denial of plaintiffs' travel request is based upon a policy determination of the Board not to approve travel by parolees to foreign areas where the Board is unable to perform its duty of supervising over and communicating with the parolee. The Board noted in its "Statement of Reasons" that:

> it will not approve the travel of a parolee to an area where the Board totally lacks any official means of communicating, in the discharge of its

assigned responsibilities, with the parolee. The parolee remains, in contemplation of law, in the custody of the Attorney General. The Board considers that it must be able, where necessary, to direct the parolee to report immediately to the Board, or to his supervising Parole Officer. It must be able in some official manner to ascertain, in the discharge of its responsibilities, at all times whether conduct engaged in by the parolee is consistent with the terms of parole and, in particular, with the representations the parolee made to the Board in securing its approval for such travel. The Board, on full reconsideration of the matter, deems this to be a reasonable limitation, and within its lawful competence to impose on parolees traveling outside the United States.[28]

██ In general, restrictions upon parolee's travel allow the Parole Board and its officials to control effectively the parolee and reduce the opportunities for conduct incompatible with the terms and conditions of parole. The condition that the parolee remain in a certain locality facilitates the collection of accurate information that may require modification in the parolee's program of rehabilitation and reintegration into the community. In addition, travel limitations permit the early detection of incipient recidivism or parole violations that may necessitate immediate corrective action. Plaintiffs have characterized these justifications for travel restrictions as "transparently unrealistic" primarily because the paroling authorities have not maintained a stringent schedule of frequent contacts with the plaintiffs. It is a curious argument indeed that on the one hand plaintiffs complain that the Board has unreasonably impaired their freedom of movement and on the other hand that the Board has failed to perform its duties of supervision and rehabilitation by not insisting upon regular meetings and repeated communications with the plain-

38. *See* note 24, *supra*, at 5–6.

**142**

tiffs. In any event, this Court is not prepared to rule that the Board has completely forfeited its ability to enforce travel restrictions on the grounds that the Board has not established strict procedures whereby plaintiffs would be subjected to close supervision and required to attend recurrent sessions with the paroling officials. It is a recognized fact that due to limitations on budgetary allocations and manpower resources, the federal parole system has not been entirely successful in the rehabilitation and reintegration of parolees into society. Nevertheless, these limitations should not compel the judicial conclusion that the paroling authorities may no longer establish or enforce reasonable travel restrictions in an effort to accomplish the purposes of parole. If this Court enjoined the Board from denying permission to plaintiffs to journey to North Vietnam, it is difficult to imagine what discretion or power is left in the Board to control the travel of plaintiffs or other parolees. This result would, in effect, give plaintiffs a carte blanche to travel whenever and wherever they desire.[29] To grant the plaintiffs the relief they seek would mean the elimination of Parole Board discretion and unnecessarily interfere with the functioning of the parole system—a result that is not warranted by the record herein.

In sum, after carefully reviewing the facts and the applicable legal authorities, and considering the purposes of parole, the discretion of the Parole Board, and the status of parolees, this Court concludes that the plaintiffs are not entitled to prevail in this action. The Parole Board acted within the scope of its statutory power and authority in denying plaintiffs permission to travel to Hanoi. Furthermore, the Board's denial of permission to plaintiffs to travel to North

Vietnam did not violate their First Amendment rights. Finally, the reasons for the Board action did not constitute an abuse of discretion or an arbitrary denial of substantive due process.

Accordingly, it is by the Court this 3rd day of May, 1973,

Ordered that defendants' motion for summary judgment be and the same is hereby granted; and it is further

Ordered that plaintiffs' motion for a preliminary injunction is denied as being moot.

---

**29.** In plaintiffs' verified complaint they requested this Court to "enjoin the defendants from interfering with the projected trip by the plaintiffs to Hanoi or from interfering with any future travel plans of the plaintiffs wherein they seek to exercise their First Amendment rights." Verified Complaint p. 7,

paragraph 1(c). Of course, in every trip plaintiffs presumably would be speaking and associating with others and in that sense would always be exercising First Amendment rights. Therefore, the relief sought by plaintiffs is actually absolute permission to travel anywhere and anytime they wish.