**UNITED STATES of America,**
**Appellant,**

v.

**The WASHINGTON POST COM-**
**PANY et al.**

**No. 71–1487.**

United States Court of Appeals,
District of Columbia Circuit.

Argued June 23, 1971.

Decided June 23, 1971.

Rehearing Denied June 24, 1971.

See also D.C.Cir., 446 F.2d 1322.

Mr. Erwin N. Griswold, Sol. Gen. of the United States and Kevin T. Maroney, Atty., Department of Justice, for appellant. Messrs. Thomas A. Flannery, U. S. Atty., and Daniel J. McAuliffe, Atty., Department of Justice, were on the memorandum for appellant. Messrs. John A. Terry and Joseph M. Hannon, Asst. U. S. Attys., also entered appearances for appellant.

Mr. William R. Glendon, Washington, D. C., with whom Messrs. Roger A. Clark and Anthony F. Essaye, Washington, D. C., were on the brief, for appellees.

Congressman Bob Eckhardt, pro hac vice by special leave of court, with whom Mr. James H. Heller, Attorney, American Civil Liberties Union Fund of National Capital Area, was on the brief, on behalf of amici curiae Twenty-Seven Members of Congress, et al.

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges, sitting *en banc*.

PER CURIAM:

This is an appeal by the United States from an order of the district court denying a preliminary injunction against the publication of material derived from a document entitled "History of U. S. Decision-Making Process on Vietnam Policy". We affirm the district court.

■ The district court denied the preliminary injunction after a hearing. By affidavits and the testimony of witnesses at the hearing the government attempted to demonstrate that the publication of the material in question should be restrained because it would gravely prejudice the defense interests of the United States or result in irreparable injury to the United States. The district court found that the government failed to sustain its burden. Specifically, the district court directed the government to present any document from the "History" the disclosure of which in the government's judgment would irreparably harm the United States. The government's affidavits and testimony, presented largely *in camera*, discussed several of the documents. The district court found either that disclosure of those specific documents would not be harmful or that any harm resulting from disclosure would be insufficient to override First Amendment interests. Having examined the record made before the district court we agree with its conclusion. In our opinion the government's proof, judged by the standard suggested in Near v. Minnesota, 283 U.S. 697, 716, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), does not justify an injunction.[1]

1. We disagree with Judge Wilkey on the conclusions he draws from the record.

The vitality of the principle, that any prior restraint on publication comes into court under a heavy presumption against its constitutional validity, was recognized by the Supreme Court of the United States as recently as May 17, 1971. Organization for a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1970).

Our conclusion to affirm the denial of injunctive relief is fortified by the consideration that the massive character of the "leak" which has occurred, and the disclosures already made by several newspapers, raise substantial doubt that effective relief of the kind sought by the government can be provided by the judiciary.

The government has requested a stay in order that it may present this matter to the Supreme Court of the United States. Accordingly, the stay previously entered is continued until 6:00 P.M., Friday, June 25, 1971.

Affirmed.

MacKINNON, Circuit Judge:

It is unfortunate that this case comes to us on a blind record in which the actual documents in the possession of the newspaper are not before us. Our ability to deal effectively with the problem is also currently complicated today by the release of the entire 47 volumes to Congress where the problem of disclosure may be compounded. This and the widespread disclosure heretofore made, would minimize the value of any restraining order. However, by agreement of the parties some of the documents will be protected, and an examination of some of the other documents convinces me that we should not entirely abdicate our responsibility to protect the security of our nation's military and diplomatic activities even though the ability of any court to act effectively is greatly impaired by the present climate of disclosure. Since we must pass on some phases of the matter,

at the very least I would remand to the District Court for a more precise ruling by the trial court as to several specific documents. I would not reward the theft of these documents by a complete declassification. There is a regular method by which access to classified information can be accomplished and in my view the prescribed method should be followed in this as in other instances. As this case well illustrates, courts are not designed to deal adequately with national defense and foreign policy. Epstein v. Resor, 421 F.2d 930, 933 (9th Cir.), cert. denied, 398 U.S. 965, 90 S.Ct. 2176, 26 L.Ed.2d 549 (1970).

WILKEY, Circuit Judge:

I would affirm the action of the trial court in not restraining the publication of the vast majority of these documents, but I must dissent from the blanket, total affirmance of the trial court's action, without a remand for a particularized finding as to the likelihood of harm resulting from the publication of certain specific papers.

We all take pride in freedom of speech and the press as one of the true glories of our form of government, perhaps most eloquently apotheosized by Judge Learned Hand, "To many this is, and always will be, folly; but we have staked upon it our all." [1] This sets an ideal reference point, but Judge Hand, when he uttered those words, was not adjudicating this particular case. Of more relevance to the case at bar are the words of Justice Holmes: "The character of every act depends upon the circumstances in which it is done. * * * The question in every case is whether the words used are used in such circumstances and of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent. It is a question of proximity and degree." [2] To which Justice Frankfurter added: "Free speech is not so ab-

---

1. United States v. Associated Press, 52 F.Supp. 362, 372 (S.D.N.Y.1943).

2. Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470, 473–474 (1919).

solute or irrational a conception as to imply paralysis of the means for effective protection of all the freedoms secured by the Bill of Rights." [3]

The compression of time, made necessary by the desire to minimize the prior restraint of publication required in the stay Orders, severely handicapped the parties, the trial court and this court in focusing on the few specific documents whose publication presently constitute a clear danger. The Government did not know which documents out of the 47 volumes the *Post* had in its possession until a partial list was furnished the night before the second hearing before the trial court, a supplemental list was furnished in the middle of the hearing, and not until the Government had time to check the *Post* description of each document against the 47 volumes was the Government in a position to say whether in its opinion publication would be dangerous or not. The obvious clarifying solution of the *Post* physically producing the documents in its possession was barred by the *Post's* objection, sustained by the trial court, that its source would be revealed.

In this state of affairs the Government necessarily relied on affidavits couched in general terms, two dated before and one on the day of the hearing. These and the cross-examination of two affiants on the material in the affidavits did not satisfy the trial court with the requisite specificity as to the clear danger that publication of any single document presently represented. On this state of the record the court here sustains the trial court, saying that the Government did not sustain its admittedly heavy burden of proof to justify a prior restraint on publication.

We have not been furnished any of the original documents. But on careful detailed study of the affidavits in evidence, I find a number of examples of documents which, if in the possession of the *Post* and if published, could clearly result in great harm to the nation. When I say "harm," I mean the death of soldiers, the destruction of alliances, the greatly increased difficulty of negotiation with our enemies, the inability of our diplomats to negotiate as honest brokers between would-be belligerents.

The court's opinion relies upon the standard of Near v. Minnesota in regard to prior restraint. So do I. *Near* cites "the publication of the sailing dates of transports or the number and location of troops" [4] as obvious examples where prior restraint of publication would be justified. In the affidavit evidence before the trial court and this court there are examples cited which meet this standard. There appears to be a clear and present danger of military casualties enhanced. There are numerous examples of the likely destruction of our diplomatic efforts, and this should not be put on a lower scale than immediate prospective military losses. Only those who think of the settlement of international disputes by sheer military power would derogate the importance of diplomatic negotiations as our first line of defense. It is literally true that when diplomacy fails lives are lost.

Of course the great bulk of these documents probably may be characterized as only embarrassing, some not even that, and are ready for study by journalists, historians and the public; the public should have them. Yet the small percentage which appear dangerous could be grievously harmful to this country.

Since neither we nor the trial court had before it the individual documents, and the trial court dealt only in generalities, because that was necessarily the Government's case, I would remand this case to the trial court for the Government, first, now that it has the *Post* complete list and has had the time to check the list against the 47 volumes, to say which documents it objects to having

3. Bridges v. California, 314 U.S. 252, 282, 62 S.Ct. 190, 203, 86 L.Ed. 192, 213 (Dissenting opinion.) (1941).

4. Near v. Minnesota, 283 U.S. 697, 716, 51 S.Ct. 625, 631, 75 L.Ed. 1367 (1931).

published. This, in my judgment, will immediately release the great bulk of these for publication. (If it doesn't, the Government is relying on the wrong standard.) Next, the Government can pinpoint its objections to each of the remaining documents. On the basis of what we heard in oral argument, the *Post* might agree that some would not be published, leaving a remainder on which it differs with the Government. On the remainder the trial court can then rule, applying the *Near* standard, but this time knowing to which specific document the standard is to be applied.

### On Petition for Rehearing and Modification of Decision

PER CURIAM:

This is another phase of the Government's quest for injunctive relief against the publication by the *Washington Post* of material derived from a document entitled "History of U. S. Decision-Making Process on Vietnam Policy."

The case is now before us on the Government's petition for rehearing and for modification of our decision of June 23, 1971, predicated for the most part on the order entered earlier the same day by the United States Court of Appeals for the Second Circuit in No. 1067, September Term 1970, United States v. New York Times, 444 F.2d 544 remanding the case to the District Court for further *in camera* proceedings.

Having the greatest of respect for the Solicitor General, we have given his petition careful consideration but conclude that it should be denied. We state our reasons briefly.

1. The petition sets forth that neither the District Court nor this court has itself examined any of the documents, and continues: "On a matter involving the possibility of grave and immediate danger to the security of the United States, there should be an opportunity for an appropriate adversary hearing in court." We are of the view that there has been such an opportunity.

The complaint filed by the Government in the District Court prayed for a temporary restraining order enjoining the defendants from "dissemination, disclosure or divulgence" of the material in question "or any excerpt, portion or summary thereof." The District Court denied the motion for a temporary restraining order. A panel of this court, one judge dissenting, reversed the District Court's order and directed that court to hold a hearing, in order to afford the Government an opportunity to make its case on the facts. The panel specified that the issue at that hearing was whether the threatened publication would so prejudice the defense interests of the United States or result in such irreparable injury to the United States that publication be restrained.

The hearing held by the District Court was conducted in part in open court, and in part *in camera.* In the open hearing a witness for the Government, Mr. Dennis J. Doolin, a senior official of the Defense Department, testified that he had been engaged in a continuing review of this History since November 1969, at the direction of the Secretary of Defense, to determine whether to grant the request of Senator Fulbright, Chairman of the Senate Foreign Relations Committee, for the study. This official further testified that the review "was continuing as late as the week before the articles appeared in the New York Times."

At the presentation to the District Court *in camera* the court had before it Top Secret affidavits and oral examination of Government witnesses, including Mr. Doolin. In this session, as noted in our opinion yesterday, the Government was directed to focus on any specific document that would prejudice the nation's defense interests.

The Government specified and discussed several documents. The District Court found that disclosure of those documents would not be harmful or that any harm resulting from disclosure would be insufficient to justify an injunction. Ac-

cordingly, the District Court refused to issue a preliminary injunction. We agreed with the conclusion of the District Court.

In this context we are satisfied that the Government had appropriate opportunity to make the kind of showing appropriate to justify a prior restraint on the nation's historic free press. Its essential complaint is a dissatisfaction with our conclusion that it has not met its heavy burden of proof.

■ 2. We turn to the difference between our order and that of the Second Circuit. We are not apprised directly of the state of the record before that court. We are advised by appellees that in opposing the application by the *New York Times* for a stay of that court's remand order, the Government recites that "it was unable to prepare as complete a submission as it could present with the additional time it had available in the *Washington Post* case."

■ We decided this case on the record made in the United States District Court for the District of Columbia and presented to us on appeal. Considerations of comity often call on one court to adjust its procedures in order to avoid interference with the processes of another court. But this cannot properly lead us to decide a case except on the record made, there having been adequate opportunity to make a record, and our best judgment as to the significance of that record. Considerations of comity may not properly be stretched unduly when what is involved is a prior restraint on the press we do not find constitutionally authorized.

3. The Supreme Court has been asked by the *New York Times* for a stay of the order of the Second Circuit. At the Gov-

ernment's request we deferred the effective date of our order for two days in order that the Government might seek a stay of our order affirming the District Court. This procedure will provide appropriate opportunity for resolution of differences in approach between the two courts.

4. The petition for rehearing brings out the possibility of inequities as between the *New York Times* and the *Washington Post* under the orders of the two courts as they stand. We observe that there may be newspapers not before either court which would have to be taken into account. Appellees' memorandum notes that since last night the *Los Angeles Times* has published another full story from the papers of the History, as have eight of the newspapers in the Knight chain, including the *Philadelphia Inquirer, Detroit Free Press* and *Miami Herald.*

The increasing disclosures increase our concern, expressed in our opinion yesterday, whether effective relief of the kind sought by the Government can be provided by the judiciary.

We have given serious consideration to the Government's request for oral presentation on the petition for reconsideration. We conclude that we are fully apprised of all material considerations and that the matter is now ripe for presentation to the Supreme Court.

The petition for rehearing and for modification of decision is denied.

So ordered.

Circuit Judges MacKINNON and WILKEY would grant the Government's petition for the reasons stated in their dissents of 23 June 1971, and for the additional reason of the subsequent action of the Second Circuit in its related case.