**In re CONTINENTAL ENERGY AS-
SOCIATES LIMITED PART-
NERSHIP, Debtor.**

**CONTINENTAL ENERGY ASSOCIATES
LIMITED PARTNERSHIP, Plaintiff,**

**v.**

**HAZLETON FUEL MANAGEMENT
CO., Defendant.**

**Bankruptcy No. 5–94–01486.
Adv. No. 5–95–00014A.**

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes–Barre Division.

Feb. 10, 1995.

Lawrence Handelsman, John Kraljic and Brian Cogan, Stroock & Stroock & Lavan, New York City, Charles Shea, Kingston, PA, for Continental Energy Associates Ltd. Partnership.

William Rochelle, David Rosenzweig, Tom Alan Cunningham and Courtney Slatten Katzenstein, Fulbright & Jaworski, New York City, for Hazleton Fuel Management Co.

Howard Beltzer and Philip Schaeffer, White & Case, New York City, Ethan D. Fogel, Philadelphia, PA, for Swiss Bank.

Adam Isenberg and J. Scott Victor, Saul, Ewing, Remick & Saul, Philadelphia, PA, for Unsecured Creditors' Committee.

Mary France, Asst. U.S. Trustee, Office of U.S. Trustee, Harrisburg, PA, for U.S. Trustee's Office.

### OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

The court is currently considering the request of the Debtor, Continental Energy Associates Limited Partnership, ("Debtor"), to impose a preliminary injunction against Hazleton Fuel Management Company, ("Hazleton"), so as to require Hazleton to supply the Debtor a continuous supply of natural gas until such time as the Debtor assumes or rejects a pre-petition contract with Hazleton

to supply such fuel to the Debtor. Hazleton responds by suggesting that this court has no power to compel a supplier to deal with the Debtor absent an assumption of the contract.

We will briefly summarize the facts which, unless otherwise indicated, appear not to be disputed. The Debtor operates a cogeneration facility which, to a great extent, depends on a continuous supply of natural gas through a fifteen (15) mile pipeline built especially for the Debtor by an affiliate of Hazleton consistent with a contract by Hazleton to supply natural gas to the Debtor to operate its facility.

In March of 1994, Hazleton entered into its most recent agreement with the Debtor to supply this gas at a disputed rate which approximates Three and 70/100 Dollars ($3.70) per million British thermal units (MMBtu). The Debtor's use of gas under the contract amounts to approximately One Hundred Thousand Dollars ($100,000.00) per diem. Prior to the bankruptcy, the Debtor was in arrears on the contract in excess of Fifteen Million Dollars ($15,000,000.00).

As a form of adequate protection and/or assurance, the Debtor has offered to pay to Hazleton, in advance, the sum of One Hundred Thousand Dollars ($100,000.00) per day in what the court believes to be seven-day blocks in order to secure to Hazleton that the Debtor's post-petition usage will be fully compensated. Nevertheless, the Debtor is not now willing to assume the contract inasmuch as it believes that the market rate for natural gas is currently much lower than Three and 70/100 Dollars ($3.70) per MMBtu and thus a significant savings might be obtained by rejecting the contract and securing natural gas from another source.

Notwithstanding this position, the Debtor hesitates to reject the contract because it is uncertain that it has an immediate alternative source of natural gas which must be supplied through the pipeline built for it by Hazleton's affiliate and leased to a public utility, UGI Corporation.

The Debtor maintains that under 11 U.S.C. § 503(b)(1), any current payments paid to Hazleton over and above the reasonable cost of such natural gas must be returned to the Debtor after such adjudication. Hazleton maintains that it does not choose to deliver such natural gas under those circumstances but will deliver it voluntarily should the Debtor agree to be bound by the contract or, of course, if the Debtor assumes the contract.

At the hearing on January 25, 1995, this court did enter an order, on motion by Hazleton, requiring the Debtor to assume or reject the contract within thirty (30) days thereof.

Hazleton maintains that the court has no power to compel a supplier to furnish material and/or services to a debtor at a price mandated by the court.

To the contrary, the courts have traditionally compelled a non-debtor landlord to supply space to a debtor pending the assumption or rejection of a lease agreement. *In re Mr. Gatti's, Inc.,* 164 B.R. 929 (Bkrtcy.W.D.Tx. 1994). Admittedly, it has been less common where the courts have compelled a supplier to furnish some service or material, postpetition, in the absence of an assumed contract, but there is some precedent. *In the Matter of Whitcomb & Keller Mortgage Co., Inc.,* 715 F.2d 375 (7th Cir.1983). Even our circuit has tacitly accepted the possibility that a bankruptcy court can compel a supplier to furnish electricity to a bankrupt. *In the Matter of Penn Central Trans. Co.,* 467 F.2d 100 (3rd Cir.1972).

■ While we are concerned about the Fifth Amendment rights of an entity to be compensated for property, the fact that the Debtor is now paying to Hazleton the contract amount in advance, together with a court commitment that that compensation should be at least as much as determined to be a "reasonable amount", suggests that Hazleton's Fifth Amendment rights are vigilantly being guarded by this court.

We are not unmindful of language in *National Labor Relations Board v. Bildisco and Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), which states as follows, "... the filing of the petition in bankruptcy means that the collective-bargaining agreement is no longer immediately enforceable, and may never be enforceable again." *Id.* at page 532, 104 S.Ct. at 1199. Although this language can be considered to apply to both

debtor and non-debtor parties to the contract, that interpretation has generally not been accepted [1].

Although significant deference is given to the decisions of the Supreme Court of the United States, the language quoted is dictum and is not controlling on this court. *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Company*, 652 F.2d 1165 (3rd Cir. 1981).

■ At first glance, the concept that a contract should not be enforceable by either side to a contract until it has been assumed by a debtor makes imminent sense. If it is accepted that the non-debtor party to a contract is stayed from enforcing the terms of that contract on a debtor prior to assumption, then fairness would seem to suggest that the converse should also be true.

This approach, however, minimizes the impact that nonperformance may have on a debtor. The case at issue is a fine example of that type of impact. If Hazleton refuses to supply natural gas to the Debtor pending the assumption of the contract, then the Debtor is effectively prevented from operating until such time as it can negotiate a new source of energy. Not only does this saddle an ailing company with an additional burden which it is unlikely to overcome, it pressures the Debtor to surrender the "breathing space" normally allowed to it to consider the assumption or rejection of the contract. As a matter of its very existence, the Debtor is influenced to immediately assume the contract with all of its administrative burdens. *11 U.S.C. § 365(g)(2); See also 2 Collier on Bankruptcy, 15th Ed. ¶ 365.08[1].* The only reasonable conclusion is that this court, consistent with 11 U.S.C. § 105, can issue an order that would allow such debtor to enforce the contract until such time that it accepts or rejects the contract, provided that we diligently guard the interests of the non-debtor party to the contract.

This holding, however, does not conclude our analysis.

Hazleton is willing to comply with the terms of the contract before assumption on the condition that it be paid the contract price without recourse by the Debtor to adjusting its consideration at a later time.

We recognize that pursuant to the terms of the arrangement between the parties to the supply agreement, Hazleton or its predecessor embarked on a costly and time-consuming effort to guarantee the supply of natural gas to the Debtor over a lengthy period of time. This court need not speculate to conclude that the effort to make such a quantity of natural gas available on a regular basis must be a significant undertaking not necessarily measured only by the market.

■ The court acknowledges that an election to assume an executory contract results in an assumption of the contract cum onere (with all of its burdens). *In re Italian Cook Oil Corp.*, 190 F.2d 994, 996 (3rd Cir. 1951). Nevertheless, there is ample authority for the proposition that, pending assumption or rejection, the Debtor may elect to enforce the contract thereby being required to pay for the reasonable value of the material or services supplied. *National Labor Relations Board v. Bildisco and Bildisco, supra* 465 U.S. at page 531, 104 S.Ct. at page 1198–99; *Philadelphia Co., et al. v. Dipple, et al.*, 312 U.S. 168, 174, 61 S.Ct. 538, 541, 85 L.Ed. 651 (1941); *In re Food City, Inc.*, 95 B.R. 451, 454 (Bkrtcy.W.D.Tx.1988); and *In re By–Rite Distributing, Inc.*, 47 B.R. 660, 663 and 664 (Bkrtcy.D.Utah, C.D.1985). Often times that cost will be measured by reference to the contract which presumably has been negotiated at arm's length. *National Labor Relations Board v. Bildisco and Bildisco, supra* 465 U.S. at page 531, 104 S.Ct. at page 1198–99. For this court, however, to be bound by the terms of the contract would invite possibilities that this court

---

1. See the following articles and the cases cited therein.

Schorling & Simons, *Adequate Protection for the Nondebtor Party to Executory Contracts and Leases*, 64 Am.Bankr.L.J. 297 (1990); "... Bildisco should be limited to the proposition that an unassumed contract is only unenforceable *against* the debtor-in-possession" [Emphasis ours], Buschman, *Benefits and Burdens: Post-petition Performance of Unassumed Executory Contracts*, 5 Bankr.Dev.J. 341, 359 (1988); and Bordewieck, *The Post-petition, Pre–Rejection, Pre-Assumption Status of an Executory Contract*, 59 Am.Bankr.L.J. 197 (1985).

would be placed in the position of enforcing a contract, possibly oppressive in terms, before it had an opportunity to review same. When the court considers the Debtor's request to assume a contract, it is authorized and required to review that assumption as a reasonable option exercised by the Debtor. *11 U.S.C. § 365(a).* If the Debtor, prior to assumption, elects to enforce the contract, and this court were to condition such enforcement on payment of the consideration in the contract not subject to further review for reasonableness, then we would be placed in a position of authorizing an administrative expense that may be violative of 11 U.S.C. § 503(b)(1). See, for example, *In re Grant Broadcasting of Philadelphia, Inc.,* 71 B.R. 891 (Bkrtcy.E.D.Pa.1987). We will not do this because we see no detriment to the non-debtor party to the contract considering the fact that the Debtor must assume or reject the contract within thirty (30) days of January 25, 1995. The Debtor is transferring, in advance, the contract price to Hazleton, and Hazleton has not identified any specific harm that would befall it by reason of this decision.

■ We are convinced that the Debtor has demonstrated irreparable injury should it lose its source of natural gas without provisions to replace that source. We are further convinced that the Debtor has shown a strong or substantial likelihood or probability of success since, after consideration, we accept the proposition proffered by Judge Buschman, that a debtor can enforce the terms of a contract prior to assumption or rejection. *In re McLean Industries, Inc.,* 96 B.R. 440 (Bkrtcy.S.D.N.Y.1989); Buschman, *Benefits and Burdens: Post-petition Performance of Unassumed Contracts,* **5 Bankr. Dev.J.** 341 (1988).

Our Order is attached.

### ORDER

For the reasons stated in the attached Opinion, the Defendant is preliminarily enjoined from terminating the supply of natural gas to the Debtor as long as the Debtor continues to prepay for that gas under the terms of the existing agreement. The court reserves the right to reconsider the reasonable value of gas supplied under the contract under 11 U.S.C. 503(b)(1).

This injunction shall dissolve upon court approval of the assumption or rejection of the pre-petition agreement.