**In re CONTINENTAL ENERGY AS-SOCIATES LIMITED PART-NERSHIP, Debtor.**

**CONTINENTAL ENERGY ASSOCIATES LIMITED PARTNERSHIP, Plaintiff,**

v.

**HAZLETON FUEL MANAGEMENT COMPANY, Defendant.**

Bankruptcy No. 5–94–01486.
Adversary No. 5–95–00014A.

United States Bankruptcy Court,
M.D. Pennsylvania.

July 16, 1996.

Lawrence Handelsman, New York City, for Debtor/Plaintiff.

Charles A. Shea, III, Kingston, PA, for Debtor/Plaintiff.

Scott J. Davido, Pittsburgh, PA, for Defendant.

J. Scott Victor, Philadelphia, PA, for Creditors' Committee.

Howard S. Beltzer, New York City, for Swiss Bank Corp.

### OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

### PROCEDURAL HISTORY

On January 18, 1995, the Debtor, Continental Energy Associates Limited Partnership, ("CEA"), filed a complaint requesting injunctive relief against Hazleton Fuel Management Company, ("Hazleton").

Prior to CEA's bankruptcy on November 14, 1994, Hazleton supplied natural gas to CEA on an ongoing basis through a fifteen (15) mile pipeline pursuant to a pre-petition contract with CEA. When the complaint was filed, CEA had not as yet decided to assume or reject that contract but needed the continued supply of natural gas in order to operate. CEA sought to compel Hazleton to supply that natural gas despite the uncertainty of whether the contract would be assumed. By Opinion and Order dated February 10, 1995, the court preliminarily enjoined Hazleton from terminating its supply of natural gas to CEA provided that CEA continued to prepay for this gas under the terms of the existing contract. The court specifically reserved the right to "reconsider the reasonable value of gas supplied under the contract under 11 U.S.C. 503(b)(1)." *In re Continental Energy Associates Limited Partnership,* 178 B.R. 405, 409 (Bkrtcy.M.D.Pa.1995).

The complaint has never been answered. Rather, Hazleton, on January 23, 1995, filed a cross motion to dismiss for failure to state a claim, or, in the alternative, for summary judgment.

Moreover, on September 1, 1995, Swiss Bank Corporation, New York Branch, filed a complaint of intervenor seeking to compel Hazleton to turn over to CEA an amount "constituting the difference between the aggregate amount paid by CEA for natural gas delivered by Hazleton following the petition date and the fair market value of such natural gas with interest...." On November 2, 1995, Hazleton moved to dismiss that complaint.

During the pendency of the original complaint, a hearing on the request for preliminary injunction was scheduled and heard by the court on January 25, 1995. As indicated, on February 10, 1995, the court did issue an order enjoining Hazleton from terminating the supply of natural gas on the condition that CEA continue to prepay for the gas utilized at the rate provided by the existing agreement with the court reserving the right to reconsider the value of that gas at a later time.

Hazleton, in its cross motion to dismiss the complaint and its motion to dismiss Swiss Bank Corporation's complaint in intervention, principally maintains that the court does not have the power to do what is being asked of it in the complaints.

Stated another way, "Can this court compel compliance with an unassumed contract while reserving to itself the ability to order disgorgement of payments exceeding the rea-

sonable amount paid to the non-debtor party to the contract by the debtor?"

We have had the benefit of a preliminary injunction hearing in this case. In granting the injunction, we concluded that CEA had shown a substantial likelihood or probability of success at the final hearing inasmuch as we accepted the proposition that a contract can be enforced by a debtor prior to assumption. *In re Continental Energy Associates Limited Partnership*, 178 B.R. 405, 409 (Bkrtcy.M.D.Pa.1995). We conditioned that conclusion with the proposition that CEA would be required to prepay the contract price of the gas subject to further court review.

In fact, CEA contends that the instant motions should be denied inasmuch as this conclusion has become the "law of the case" and, therefore, should control the future disposition of this issue. *Plaintiff's Memorandum dated Dec. 18, 1995 at p. 8.*

■ Initially, we disagree that the order we issued after a preliminary injunction hearing could create the law of the case. All parties understood that expedited hearing to be a fractured synopsis of the full litigation designed solely to allow the court, in compelling circumstances, to issue provisional orders. While it may be argued otherwise, the very nature of a preliminary injunction invites the parties to relitigate the court's preliminary order at the time of the final hearing.

Absent consolidation of the preliminary hearing with the final trial on the merits, the resolution of contested issues on the basis of the earlier findings is "[I]n substance to order consolidation after the testimony has been taken, a practice generally held improper." *7 Moores Federal Practice, part 2, ¶ 65.04[5] at fn. 8.*

■ This is a proposition supported by case law. *DiLaura v. Power Authority of New York*, 982 F.2d 73, 77 (2nd Cir.1992); *Berrigan v. Sigler*, 499 F.2d 514, 518 (D.C.Cir.1974). As indicated by the Supreme Court, an order granting a preliminary injunction is not a final judgment on the merits and, therefore, does not trigger the rule of practice of "law of the case". *United States v. United States Smelting Refining & Mining Co.*, 339 U.S. 186, 198–99, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950).

■ Nevertheless, in rejecting the proposition that we are bound by the order we issued in regard to the preliminary injunction, it does not follow that we will choose to re-examine the support for that order at this time. In asking us to do that, Hazleton has raised a new argument that this court does not have the power to order a disgorgement of earlier post-petition payments to Hazleton even if the court should conclude that the payments for gas exceeded its reasonable value. Hazleton cites three cases for the proposition that "operational expenses" under 11 U.S.C. § 363(c) are authorized by the Code and cannot be subject to disgorgement as would an 11 U.S.C. § 503(b) expense. *In re Telesphere Communications, Inc.*, 148 B.R. 525 (Bkrtcy.N.D.Ill.1992); *In re Florida West Gateway, Inc.*, 166 B.R. 981 (Bkrtcy. S.D.Fl.1994), on reconsideration 180 B.R. 299, 302 (1995); *In re Vernon Sand & Gravel, Inc.*, 109 B.R. 255 (Bkrtcy.N.D.Ohio 1989). The proposition that post-petition, ordinary course business expenses are not subject to disgorgement is embraced by only a minority of courts with the majority concluding otherwise. See *In re Telesphere Communications, Inc.*, supra. at p. 527. Even if we were to accept the minority position, we would be required to make a finding that the massive amount of natural gas supplied by Hazleton pursuant to the pre-petition contract was in the "ordinary course of business". We believe such a finding first requires that this court be educated as to exactly what is entailed in the ordinary course of an operating cogeneration facility.

That is a finding which should only be arrived at after a full trial on the issue.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted "where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle [it] to relief". *2A Moores Federal Practice, ¶ 12.07[2.–5] at p. 12–87* citing *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Since it is possible that the Plaintiff can prevail at the time of trial, we are required to deny this motion.